**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ReBath LLC, | No. CV-19-04873-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| HD Solutions LLC, *et al.*, | |
| Defendants. | |

At issue are Plaintiff's Motion for Contempt and Request for Sanctions for Defendants' Violation of Preliminary Injunction (Doc. 38, Mot.), to which Defendants filed a Response (Doc. 45, Resp.) and Plaintiff filed a Reply (Doc. 49, Reply); and Defendants' Motion for Leave to File Sur-Reply (Doc. 50), to which Plaintiff responded in opposition (Doc. 52). For the reasons that follow, the Court grants both Defendants' Motion for Leave to File Sur-Reply—and will consider Defendants' proposed Sur-Reply (Doc. 50 Ex. A) in resolving Plaintiff's underlying Motion—and Plaintiff's Motion for Contempt.

**I.    BACKGROUND**

Plaintiff is a nationwide bathroom remodeling franchisor that licenses its remodeling system to franchisees who operate their businesses using the ReBath service marks. (Doc. 1 at 2.) Defendant HD Solutions ("HD") is a former franchisee of Plaintiff's located in San Antonio, Texas, who operated under the ReBath trade name for 12 years. Defendant Jason Hicks is a principal and co-owner of HD. (Doc. 36 at 2.) Following a dispute resolved through arbitration, the parties terminated their franchise relationship on

June 30, 2019. (Resp. at 4.) Defendants immediately rebranded and began operating a competing remodeling company, Legacy Bath and Kitchen ("Legacy"). (Resp. at 4.)

Plaintiff filed a Complaint against Defendants on August 1, 2019, and moved for a Temporary Restraining Order ("TRO") (Doc. 2) on the same day. Plaintiff sought an injunction against what it alleged was Defendants' wrongful use and infringement of ReBath's service marks. (Doc. 2 at 2.) At an August 2 telephonic hearing, the Court granted Plaintiff's TRO Motion and issued a formal Order on the matter on August 5. (Doc. 17.) The parties later stipulated to convert and extend the TRO to a preliminary injunction. (Doc. 24.) The Preliminary Injunction Order adopted the TRO provisions verbatim. (Doc. 26, PI.)

The Preliminary Injunction enjoined Defendants, their employees and agents, and those in active participation or concert with Defendants, from directly and indirectly:

1. Associating with the RE-BATH® trade name, trademarks, business and proprietary materials;

2. Using the RE-BATH® trade name, trademarks, domain names, websites (including www.rebathsa.com), advertisements, brochures, business cards, pamphlets, marketing pieces, photographs, customer reviews, proprietary materials in any manner whatsoever;

3. Accessing and/or redirecting www.rebathsa.com to any website other than www.rebath.com other than to disable www.rebathsa.com for the pendency of this Stipulated Preliminary Injunction Order, or pending further Order of this Court; and

4. Operating Legacy Bath & Kitchen in any other manner that gives the impression that it was or is affiliated with ReBath, including but not limited to referring to Legacy Bath & Kitchen as "formerly ReBath."

(PI at 3–4.)

Plaintiff then filed the present Motion on September 18, requesting that the Court issue an Order of civil contempt and impose coercive and compensatory sanctions on the grounds that Defendants violated and continue to violate the terms of the Preliminary Injunction.

## II. LEGAL STANDARD

Federal courts are imbued with inherent authority to enforce compliance with their lawful orders by holding noncompliant parties in contempt. *Spallone v. United States*, 493 U.S. 265, 276 (1990). A court may issue an order of civil contempt against a party that "fail[ed] to take all reasonable steps within the party's power to comply" with a specific and definite court order. *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Willfulness on the part of the contemnor is not required. *See id.* However, if the disobedience is based on a good faith and reasonable interpretation of the court's order, no contempt shall issue. *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982).

The party moving for a civil contempt order must establish the contemnor's violation by clear and convincing evidence. *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999). An alleged contemnor may defend against a finding of contempt by demonstrating either substantial compliance with the definite court order or a present inability to comply with the same. *Dual–Deck Video*, 10 F.3d at 695; *Ayers*, 166 F.3d at 994. Substantial compliance is not negated by a few technical or inadvertent violations "where every reasonable effort has been made to comply." *Id.*; *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 857 (9th Cir. 1992).

Accordingly, to grant Plaintiff's Motion, the Court must find (1) by clear and convincing evidence (2) that Defendants violated the Preliminary Injunction Order (3) beyond substantial compliance, and (4) that the violation was not based on a good faith and reasonable interpretation of the Order.

## III. ANALYSIS

Plaintiff alleges that Defendants have failed to take all reasonable steps to disassociate themselves from ReBath and instead continue to operate in a manner that suggests an affiliation with ReBath. Plaintiff's primary contention is that Legacy's pages on various platforms, including Facebook, Google, and Angie's List, contain references to ReBath, both in the form of customer reviews and Defendants' own postings and responses

to reviews. Further, Legacy's website displays the logo from the Remodeling Big 50 list, a recognition given to successful leaders in the remodeling industry. Plaintiff says that ReBath, rather than Defendants, received this award. Plaintiff maintains that, collectively, these actions (or inactions) constitute use of ReBath's trade name and customer reviews and give the impression that Defendants are affiliated with ReBath. (*See* PI at 3–4.)

**A. Defendants' own content on Facebook, Google Business, and Angie's List**

In support of its Motion, Plaintiff submits screenshots from Legacy's Facebook page, Google Business page, and its page on Angie's List, all of which reference ReBath. (Doc. 39 Exs. A, B, C.) Eleven of the ReBath references on Facebook and four of the ReBath references on Angie's List were made by Defendants themselves, rather than by customers or third parties. However, all the Google reviews mentioning ReBath were written by customers, not Defendants.

In response, Defendants submit a declaration from Krishelle Hicks ("Hicks"), Marketing Director of HD. (Resp., "Hicks Decl.") In it, Hicks details her and Defendants' extensive efforts to scrub these and other online platforms of references to ReBath. On August 3—one day after the Court orally granted the TRO—Hicks began reviewing thousands of posts on Legacy's Facebook page. (Hicks Decl. at 3.) Hicks averred that, in total, she deleted over 800 posts referring to ReBath and edited 68 of Defendants' responses to customer reviews that mentioned ReBath. (Hicks Decl. at 6.) In some instances, she deleted entire Facebook photo albums that contained photos with the ReBath logo somewhere in them. (Hicks Decl. at 4.)

HD operated its Facebook page as ReBath of San Antonio for approximately nine years and produced substantial content in that time. (Hicks Decl. at 6.) Accordingly, Hicks stated that she spent 20 hours over the course of three days culling through its Facebook page alone. (Hicks Decl. at 8.) On August 8, Plaintiff's counsel emailed Defendants' counsel alerting them to the existence of some Facebook posts that mentioned ReBath. (Doc. 40 & Ex. A.) Hicks, who believes she overlooked those photos, deleted what she thought was all Defendant-made infringing content later that day. (Hicks Decl. at 7.) On

September 19, the day after Plaintiff filed its Motion, Hicks deleted the remaining 11 Facebook posts in which Defendants referred to ReBath. (Hicks Decl. at 9.)

As for Angie's List, Hicks removed the "ReBath of San Antonio" signature line from all 205 of HD's responses to customer reviews. (Hicks Decl. at 4.) She also edited all other Defendant-made references to ReBath from all but five responses. The day after Plaintiff filed its Motion, Hicks removed references to ReBath from four of these five responses; the other one remains posted because of an error message produced each time Hicks attempts to edit it. (Hicks Decl. at 4.) With respect to Google reviews, Hicks deleted all references to ReBath from HD's review responses on August 4, prior to Plaintiff's Motion. (Hicks Decl. at 5.)

Defendants have demonstrated substantial compliance with the TRO and Preliminary Injunction in their efforts to expunge their own references to ReBath from HD's Internet pages before Plaintiff filed its Motion.[1] The fractional remainder of pre-Motion references to ReBath on Facebook and Angie's List can only be considered "technical or inadvertent" violations of the Order. *See Dual–Deck Video*, 10 F.3d at 695; *Stone*, 968 F.2d at 857. Accordingly, the Court denies Plaintiff's Motion to the extent of its allegations concerning Defendants' own posts and responses to customer reviews.

### B. Customer reviews on Facebook, Google Business, and Angie's List

The screenshots Plaintiff submitted also contain references to ReBath made by customers or other third parties. Approximately 22 references on Facebook, 43 on Angie's List, and 50 on Google came from customers or third parties. (*See* Mot. at 4; Doc. 39 Exs. A, B, C.) Plaintiff is correct that the Preliminary Injunction Order prohibits Defendants from directly or indirectly using ReBath's customer reviews or giving the impression that the two are affiliated. The relevant inquiry, however, is whether Defendants took *all*

---

[1] Hicks also described her efforts to remove any vestiges of ReBath from HD's Houzz page, porch.com listing, and yp.com listing. (Hick Decl. at 7.) Hicks deleted HD's YouTube page altogether due to difficulties in removing "rebathsanantonio" from the URL. (Hick Decl. at 3.) She also completed an online form to unclaim the ReBath of San Antonio business on Yelp. Yelp ultimately did not permit HD to rename its page as Legacy, so the ReBath Yelp page is now marked as permanently closed and Defendants were forced to create a new Yelp listing for Legacy. (Hick Decl. at 8.) These actions further demonstrate substantial compliance with the Order.

*reasonable steps* to comply with the Order, *i.e.*, all reasonable steps to remove those reviews after the Court entered the TRO and Preliminary Injunction.

As Defendants note, Plaintiff's Motion suggests that all Defendants needed to do to satisfy this standard—and therefore avoid this motion practice—was "disable reviews on Facebook or report each ReBath review to Facebook, and contact Google and Angie's List, provide them a copy of the injunction order, and request that all ReBath customer reviews be removed from their Legacy Bath and Kitchen Accounts." (Mot. at 7.) Defendants imply they did exactly that. (Resp. at 12.) The Court disagrees.

On August 8, prior to Plaintiff's Motion, Defendants did submit the Court's TRO Order to Google through an online form. (*See* Hicks Decl. Ex. B.) However, the form expressly instructs the user to provide exact URLs containing the infringing content. From what the Court can glean from Defendants' filings, Defendants did not submit URL links to the specific customer reviews citing ReBath.[2] Further, when Google emailed Hicks seeking clarification on her removal request, she replied only that HD was being sued for copyright infringement of "photos that either have the ReBath logo . . . or stock photos owned by ReBath." (Hicks Decl. Ex. C.) Hicks did not alert Google to the customer reviews referencing ReBath. Defendants submitted no further documentation of pre-Motion requests to remove or edit Google customer reviews.

As for customer reviews on Angie's List, Defendants did not produce any evidence of action taken prior to the Motion. Indeed, it appears they still have none. Hicks's supplemental declaration merely states that Defendants have no control over Angie's List. While this *may* be true, Defendants did not demonstrate efforts to confirm.[3] Further,

---

[2] Rather, it appears Defendants attached URLs to various Google Maps links displaying photos. The Court notes the unlikely possibility that, somehow, these Google Maps URLs route to or encompass the customer reviews on Defendants' Google Business page. However, Hicks's failure to mention the customer reviews in the follow-up email exchange with Google makes this possibility even more unlikely and also causes her communications to fall short of taking "all reasonable steps."

[3] The Angie's List website does say that it will not remove a review from its website unless: "(1) The member who posted the review contacts us to remove it; (2) The review is part of Complaint Resolution and the issue was successfully resolved; (3) We confirm that the comments were fraudulently posted." However, below that it states: "To have one of your reviews removed, contact us by **Begin Live Chat** feature or **Send A Message** using our

Defendants had been working with an Account Manager at Angie's List, Jenn Grubbs, during their rebranding phase in July. Defendants failed to raise the issue of customer reviews to Grubbs during that time, and still have not submitted proof that they followed up with her or anybody else about it.

With Facebook, Hicks stated only that Defendants "cannot edit customer reviews on Facebook" and that "Facebook legal appear confused" by requests to remove photos. (Hicks Decl. at 5, 10.) But Defendants failed to submit any proof that they reached out to Facebook to address the issue before Plaintiff filed its Motion.

Plaintiff suggests that if Defendants encounter difficulty with removing customer reviews, they should simply make new Internet pages for Legacy or disable the review feature on Facebook. The Court declines to impose Plaintiff's proposed solution for several reasons. First, the arbitration award mandated that ReBath "immediately and completely divest to HD Solutions: (1) all ownership rights to HD Solutions' Facebook, Google My Business and Google Places, Angie's List, and Houzz pages, and YouTube channel . . . and (3) HD Solutions' customer list/database and any and all customer reviews." (Doc. 36 Ex. B at 3.) HD is therefore the rightful owner of these pages pursuant to a legally binding and enforceable ruling.[4] Second, to require Defendants to completely start anew is overly punitive and beyond what the Court considers a reasonable step, in light of the relative degree of violation of the Preliminary Injunction Order. It further ignores the substantial time and effort that Defendants have spent to earn those reviews and goodwill in the community. Defendants can demonstrate compliance with the Court's Order without having to completely annul 12 years' worth of Internet presence.

Notwithstanding this, the Court finds for the reasons above that prior to Plaintiff's Motion, Defendants failed to take all reasonable steps to comply with the TRO and

---

contact form." (Doc. 39 Ex. C.) There is no evidence before the Court that Defendants attempted either action.

[4] This fact is one of several that distinguishes this case from *IRDC Inc. v. Eagar Mgmt. LLC*, in which the court stated in dicta that the infringing defendants "have the option" of creating new Facebook and Yelp pages, which would eliminate the problem of archived reviews. *See* No. CV–16–02486–PHX–SRB, 2017 WL 2841182 (D. Ariz. April 5, 2017).

1  Preliminary Injunction with respect to online customer reviews. Accordingly, the Court
2  grants Plaintiff's Motion on these grounds.

### C. Remodeling Big 50 recognition

Plaintiff argues that Defendants' display of the Remodeling Big 50 logo on Legacy's website impermissibly suggests a connection to ReBath because ReBath, rather than Defendants, received the award. (Mot. at 6.) Defendants submit that HD, and not Plaintiff, was awarded that designation in 2013. (Hicks Decl. at 12.) Regardless of whether Plaintiff, Defendants, or both received it, the Court finds that Plaintiff failed to establish by clear and convincing evidence a violation of the Order on these grounds. As Defendants indicate, a logo for an unrelated publication reveals no obvious connection to or affiliation with ReBath within the means of the Preliminary Injunction, and does not utilize ReBath's marks in any way. (*See* PI at 3–4.) Plaintiff's Motion is therefore denied on these grounds.

### D. Sanctions

Consistent with a court's authority to issue an order of civil attempt is its ability to levy accompanying sanctions. Whereas sanctions for criminal contempt are punitive in nature, sanctions for civil contempt are intended to coerce the contemnor to comply with the court's order and compensate the other party for losses sustained as a result of the contemnor's transgressions. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005); *Fed. Trade Comm'n v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1112 (C.D. Cal. 2001). Accordingly, upon a clear and convincing showing of the contemnor's violation of the court order, a court has the power to issue both coercive and compensatory sanctions. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947).

Plaintiff requests a coercive sanction of $5,000 per day for every day that Defendants continue to violate the Order. (Mot. at 12.) As compensatory sanctions, Plaintiff seeks an accounting of Defendants' profits so that Plaintiff can calculate the royalties "it would have received had Defendants been authorized to use ReBath Marks." (Mot. at 11.) Plaintiff proved a violation of the Order only with respect to the customer reviews that reference ReBath. The Court thus finds that coercive sanctions are appropriate

only in this regard. However, because the purpose of coercive sanctions is to force compliance with the Order, the Court must evaluate the steps Defendants have taken since the Motion to determine if the contempt is already purged and to avoid imposing redundant measures.

Since Plaintiff filed its Motion, Hicks submitted another form to Google—this one specifically tailored to customer reviews—requesting removal of infringing content and again including the Court's Order. (Hicks Decl. Ex. B at 6–7.) Google emailed Hicks on October 11 saying it has "decided not to take action." (Supp'l Hicks Decl. Ex. G.) That same day, Defendants began the process of contacting each individual Facebook reviewer and Google reviewer requesting that they edit ReBath references out of their reviews. (Supp'l Hicks Decl. at 2.) Defendants also submitted to the Court Facebook's policy that "only the trademark owner or authorized representative may file a report of trademark infringement." (Supp'l Hicks Decl. Ex. H.) The Court finds that, since the Motion, Defendants have taken sufficient reasonable steps to comply with the Order with respect to Google and Facebook customer reviews.

However, as the Court detailed in Section III.B, Defendants still have not demonstrated any efforts to remove ReBath references from Angie's List. Defendants are therefore ordered to submit a request for removal or redaction to Angie's List, both through the online chat function and the online submission option. Defendants must attach the Preliminary Injunction Order and explain the nature of the present Order. Defendants are also required to reach out to Jenn Grubbs or HD's current designated Account Manager at Angie's List and explain the same. Defendants must submit proof of these efforts within 5 days of this Order, or the Court will impose a further sanction.

The Court denies as too speculative Plaintiff's request for accounting and royalties. The Court will, however, award Plaintiff its reasonable attorneys' fees and costs associated with its Motion. Plaintiff shall submit its application documenting the reasonableness of its fees within 10 days of this Order. Any response shall be due according to the applicable Local Rule.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to File Sur-Reply (Doc. 50). The Clerk of Court is directed to file the document lodged at Document 51.

**IT IS FURTHER ORDERED** granting Plaintiff's Motion and Request for Sanctions (Doc. 38).

**IT IS FURTHER ORDERED** granting Plaintiff's request for coercive and compensatory sanctions as described in this Order.

**IT IS FURTHER ORDERED** that Defendants comply with the Court-ordered coercive sanctions as set forth in detail in this Order, according to the timeline set forth.

**IT IS FURTHER ORDERED** that Plaintiff submit its application for attorneys' fees and costs associated with its Motion within 10 days of entry of this Order.

Dated this 23rd day of October, 2019.

Honorable John J. Tuchi
United States District Judge