**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ReBath LLC, | No. CV-19-04873-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| HD Solutions LLC, et al., | |
| Defendants. | |

Pending before the Court are three discovery disputes between Plaintiff/Counter-defendant ReBath LLC (ReBath), and Defendant/Counterclaimant HD Solutions LLC (HD Solutions). (Docs. 120, 121, 122.)[1] On May 11, 2021, the Court held a discovery hearing on these matters, at which attorneys for both parties were present. (*See* Doc. 124.) After review of the parties' filings, and discussion held at the hearing, the Court will sustain ReBath's objections to HD's discovery requests for the reasons set forth below.

**I.     Background.**

    **a.     Complaint, Counterclaims, and Scheduling Order.**

On August 1, 2019, ReBath initiated this action by filing a complaint for injunctive relief and damages (Complaint) against Defendants HD Solutions and Jason Hicks

---

[1] The presiding District Court judge in this action, the Honorable John J. Tuchi, has referred these matters to this Court for resolution. (Doc. 123.)

(Defendants).[2] (Doc. 1.) Therein, ReBath alleges that Defendants have engaged in trademark infringement by failing to "discontinue its use of the Rebath marks and system" after terminating their franchise agreement with ReBath. (*Id.*) On September 16, 2019, Defendants filed an Answer to ReBath's Complaint and counterclaims, alleging two counts of "Tortious Interference With An Existing Business Relationship." (Doc. 36.)

On October 7, 2019, ReBath filed a Motion to Dismiss Defendants' counterclaims. (Doc. 46.) On January 24, 2020, after briefing, the Court granted ReBath's Motion, and dismissed both counterclaims. (Doc. 70.)

On November 22, 2019, Defendants filed a Motion for Judgment on the Pleadings. (Doc. 62.) On March 27, 2020, the Court granted Defendants' Motion in part, and granted ReBath leave to file an amended complaint within 14 days of the Order. (Doc. 82.)

That same day, the Court held a Scheduling Conference between the parties (doc. 83), and issued a Scheduling Order setting *inter alia* a discovery deadline of February 19, 2021, and a dispositive motion deadline of April 23, 2021 (doc. 84).

### b. First Amended Complaint and Counterclaims.

On April 10, 2020, ReBath filed its four-count First Amended Complaint (FAC). (Doc. 85.) Therein, ReBath alleges the following claims:

(1) Trademark Infringement in violation of the Lanham Act § 32(1) (15 U.S.C. § 1114);

(2) False Designation of Origin in Violation of the Lanham Act § 43(a) (15 U.S.C. § 1125(a)(1)(A));

(3) Cybersquating in Violation of the Lanham Act § 43(d) (15 U.S.C. § 1125(d)); and

(4) Breach of Contract by Defendant HD Solutions (Franchise Agreement).

(Doc. 85 at 17-22.) ReBath also seeks *inter alia* declaratory relief, injunctive relief, compensatory damages, treble damages as provided under 15 U.S.C. § 1117, disgorgement of all moneys realized by Defendants' unauthorized use of the Re-Bath Marks or any form thereof, ReBath's costs and attorneys' fees as provided under the Lanham Act and

---

[2] The Complaint also named Defendant David Driskill (doc. 1), but Defendant Driskill was voluntarily dismissed from this action on August 8, 2019 (doc. 22).

Franchise Agreement. (Doc. 85 at 22-23.)

On April 24, 2020, Defendants filed their Answer to the FAC, and HD Solutions asserted new counterclaims. (Doc. 88.) In its counterclaims, HD Solutions alleges three counts of trade secret misappropriation against ReBath. (*Id.*) Specifically, HD Solutions asserts that ReBath unlawfully acquired, retained, used, and disclosed HD Solutions's protected Customer List/Database (the Customer List) in violation of the Federal Defendant Trade Secrets Act (18 U.S.C. § 1836, *et seq.*), the Arizona Uniform Trade Secrets Act (Ariz. Rev. Stat. § 44-401, *et seq*.), and the Texas Uniform Trade Secrets Act (Tex. Civ. Prac. & Rem. Code § 134A.001, *et seq*.). (Doc. 88 at 29-33.) HD Solutions seeks *inter alia* declaratory relief, injunctive relief, monetary relief (in the form of compensatory and actual damages, restitution, and revenues and profits from ReBath's wrongful conduct), "exemplary, punitive, and enhanced damages," and attorneys fees to the extent permitted by law. (*Id.* at 34.)

On May 22, 2020, ReBath filed a Motion to Dismiss HD Solutions's counterclaims. (Doc. 94.) On September 18, 2020, after briefing, the Court denied ReBath's Motion. (Doc. 98.)

    **c.**    **Extensions of Discovery and Discovery Disputes.**

To date, the parties have sought three extensions of case management deadlines from the Court. (Docs. 100 (October 15, 2020), 102 (October 27, 2020), and 107 (January 27, 2021).) On November 2, 2020, the Court granted the parties' second Motion for Extension of the Deadlines (doc. 102), and extended the discovery deadline until June 18, 2021, and the dispositive motion deadline until September 24, 2021. (Doc. 103.) On January 28, 2021, the Court granted Defendants' unopposed Motion to Extend Deadlines for Initial and Rebuttal Expert Disclosures, setting new deadlines of March 5, 2021 and April 2, 2021, respectively. (Doc. 108.)

On March 30, 2021, the parties filed a "Joint Summary of Discovery Dispute" related to ReBath's Amended Notice of Rule 30(b)(6) Deposition to Defendant HD Solutions. (Doc. 116.) Specifically, the parties disputed whether the topics noticed by

ReBath were sufficiently stated with reasonable particularity under Rule 30(b)(6). (*Id.*) On April 1, 2021, the Court held a telephonic Discovery Dispute Hearing, and took the matter under advisement. (*See* Doc. 118.)

### d.     Pending Discovery Disputes.

On April 28, 2021, the parties filed three additional Joint Summaries of Discovery Disputes. (Docs. 120, 121, 122.) On April 30, 2021, the District Court referred the parties' current discovery disputes (docs. 120, 121, 122) to this Court for resolution. (Doc. 123.) On May 11, 2021, the Court held a discovery dispute hearing, at which both parties appeared. (Doc. 125.)

## II.    Legal Standard.

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563-65 (D. Ariz. 2016).[3] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see Nei v. Travelers Home and Marine Ins. Co.*, 326 F.R.D. 652, 656 (D. Mont. 2018) ("[R]elevance is defined broadly."). Despite the broad scope of relevance, discovery is limited where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome,

---

[3] Fed. R. Civ. P. 26 was amended in 2015 to limit the scope of discovery to evidence "relevant to any party's claim or defense and proportional to the needs of the case." Prior to this amendment, the scope of discovery was broader, including evidence "reasonably calculated to lead to the discovery of admissible evidence." Citing a problem with "over-discovery," the Advisory Committee deleted this phrase in the 2015 amendment, noting that it "might swallow any other limitation on the scope of discovery." Fed. R. Civ. P. 26, Advisory Committee Notes; *see generally In re Bard*, 317 F.R.D. at 563-65.

or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

If a party fails to fully comply with a discovery request from another party, the "party seeking discovery may move for an order compelling [discovery]." Fed. R. Civ. P. 37(a)(3)(B). "[T]he party seeking discovery has the burden to show the relevancy of the request." *Nei*, 326 F.R.D. at 656. In turn, "[t]he party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted." *V5 Techs. v Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev. 2019).

## III. Discussion.

On December 29, 2020, HD Solutions served its First Set of Requests for Production of Documents on ReBath (doc. 106), and issued a subpoena to non-party, and ReBath's current San Antonio-franchisee, Texas Design and Construction, Inc. (Texas Design) (*see* doc. 120-3). On February 1, 2021, ReBath responded to HD Solutions's First Requests for Production. (*See, e.g.*, Doc. 120-2.) The record does not show that Texas Design has responded to HD Solutions's subpoena.

On April 28, 2021, the parties filed the now pending Joint Summaries of Discovery Disputes. (Docs. 120, 121, 122.) Therein, HD Solutions asks the Court to compel ReBath to produce responsive discovery to several Requests for Production (RFP), to which HD Solutions believes it is entitled. (*See id.*) Specifically, HD Solutions puts at issue ReBath's responses to RFP Nos. 1, 7, 20, and 31. (*Id.*) However, through both its filings and its representations at the hearing, HD Solutions has narrowed its requests considerably from those presented in the December 29, 2020 Requests for Production. (*Id.*)

Ultimately, the parties' current discovery disputes distill into three issues:

(1) HD Solutions seeks to discover the profit and loss statements of a current ReBath-franchisee (and non-party to this action) operating in San Antonio – Texas Design.

>   ReBath objects to HD Solutions's request as beyond the scope of discovery, irrelevant, and overbroad. (Doc. 120.)
>
> (2) HD Solutions seeks to discover ReBath's "financial statements, cash flow statements, and tax returns from January 1, 2019 through the present."
>
>   ReBath objects to HD Solutions's request as irrelevant and not proportional to the needs of this case. (Doc. 121.)
>
> (3) HD Solutions seeks to discover all "documents concerning agreements between ReBath and Texas Design," including but not limited to a full and unredacted copy of those entities' current Franchise Agreement.
>
>   ReBath objects to HD Solutions's request as irrelevant and seeking confidential information that may cause competitive harm to ReBath. (Doc. 122.)

Here, the Court considers the parties' three Joint Summaries of Discovery Disputes (docs. 120, 121, 122), and the discussions held by the Court at the May 11, 2021 Discovery Dispute Hearing (doc. 125). For the reasons discussed below, the Court will sustain ReBath's objections to HD Solutions's discovery requests because HD Solutions's requests are either overbroad, irrelevant, or not proportional to the needs of this action.

**a.     HD Solutions is not entitled to Profit and Loss Statements of Texas Design.**

In the first Joint Summary, HD Solutions asks the Court to compel ReBath to "produce Texas Design's monthly profit and loss statements showing revenue, costs, and profits so that HD Solutions can sufficiently determine counterclaim damages." (Doc. 120 at 2.) HD Solutions argues that "by not producing relevant financial information from Texas Design, ReBath is impeding discovery and HD Solutions's ability to calculate its counterclaim damages claim." (*Id.*)

In response, ReBath argues that "[t]here is no legitimate reason why HD Solutions needs to see the monthly profit and loss statements of its direct competitor – a non-party in this case." (*Id.* at 3.) Specifically, ReBath asserts that the calculation of HD Solutions's potential counterclaim damages have nothing to do with Texas Design's overall profits and losses. (*Id.*) Instead, any damages HD Solutions may secure based on its trade secret misappropriation counterclaims would be calculated based on the royalties ReBath

received from Texas Design as a result of sales made using HD Solutions's protected Customer List. (*Id.*) The Court agrees.

Texas Design's profit and loss statements are irrelevant to the calculation of HD Solutions's potential damages for misappropriation. In its counterclaims, HD Solutions seeks relief against ReBath under the Federal Defendant Trade Secrets Act, the Arizona Uniform Trade Secrets Act, and the Texas Uniform Trade Secrets Act. (*See* Doc. 88 at 29-32.) Under each of these statutes, damages for an alleged trade secret misappropriation is limited to those damages that stem from the alleged misappropriation. *See* 18 U.S.C. § 1836(b)(2)(B)[4]; Ariz. Rev. Stat § 44-403(A)[5]; Tex. Civ. Prac. & Rem. Code § 134A.004[6].

---

[4] 18 U.S.C. § 1836(b) states in relevant part:

> **(3) Remedies.**--In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may—
> . . .
> **(B)** award--
> (i)(I) damages for actual loss caused by the misappropriation of the trade secret; and
> (II) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss; or
> (ii) in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;

[5] Ariz. Rev. Stat. § 44-403(A) states in relevant part:

> . . . [A] complainant is entitled to recover damages for misappropriation. Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

[6] Tex. Civ. Prac. & Rem. Code § 134A.004 states in relevant part:

> In addition to or in lieu of injunctive relief, a claimant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

At the hearing, HD Solutions argued that it is entitled to "broad discovery" relevant to establishing its damages. But ReBath has already disclosed documents to HD Solutions reflecting all sales made by Texas Design (complete with the date, name, address, amount, and description of services for the sale), all royalties received by ReBath for each of those sales, and all marketing and advertising fees invoiced to Texas Design by ReBath through the present.

When asked by the Court as to why the information already produced was insufficient to calculate its counterclaim damages, HD Solutions did not provide an explanation. Instead, HD Solutions argued that Texas Design's profit and loss statements were necessary for verification of the amount of royalties received by ReBath from Texas Design. The Court disagrees.

Texas Design is not a party to this action and is a local competitor of HD Solutions. To the extent HD Solutions can recover on its trade-secret misappropriation claims, the only relevant calculation appears to be what royalties ReBath received as a result of Texas Design's sales. HD Solutions does not allege that the royalties reported by ReBath are fraudulent. The Court declines to compel disclosure of Texas Design's profit and loss information could cause them competitive harm for the sole purpose of satisfying HD Solutions's unfounded skepticism.

At the hearing, HD Solutions also argued that Texas Design's profit and loss statements are relevant as to establishing whether ReBath "mitigated damages" that it seeks in its trademark infringement claim. When asked to explain how the requested discovery could show mitigation, HD Solutions answered as follows:

> Under ReBath's claims, they are seeking two buckets of financial relief on their trademark infringement claims. The first bucket is disgorgement of HD Solutions's profits. I am going to set that aside for now. They are also seeking damages under 15 U.S.C. § 1117(a). So, they are essentially seeking actual damages. And so, because they are seeking not just disgorgement, they are seeking damages, they would have a duty to mitigate by putting a new franchisee in the San Antonio market after my client terminated the franchise agreement because of an arbitration ruling saying ReBath material breached the franchise agreement that my client had with ReBath. So all the fees, not just the royalties, but also the initial franchise fee, any advertising fund payments, any marketing fund payments, that Texas Design paid to ReBath during the months that ReBath is seeking damages and Texas Design had the

      new franchise agreement with ReBath, those would all go to mitigation or ReBath's damages, not the disgorgement of profits, but ReBath's damages which it is claiming in this case.

(*See* Record of May 11, 2021 Hearing, 10:12:05 a.m. – 10:14:00 a.m.)

      HD Solutions argument is not persuasive. ReBath has already produced discovery disclosing the roylaties, advertising fees, and marketing fees that ReBath has assessed Texas Design during the relevant period. Thus, to the extent those other fees *are* relevant to assessing whether ReBath mitigated its damages, HD Solutions is already in possession of that information.

      Accordingly, the Court finds that HD Solutions's request for Texas Design's profit and loss statements are not relevant to this action and are beyond the scope of discovery. The Court will sustain ReBath's objection to HD Solutions's RFP No. 7, and deny HD Solutions's request for the Court to compel production of the requested profit and loss statements.

      **b.**      **HD Solutions is not entitled to ReBath's financial statements, cash flow statements, and tax returns.**

      In the second Joint Summary, HD Solutions asks the Court to compel ReBath to produce "documents concerning ReBath's financial statements, cash flow statements, and tax returns from January 1, 2019 through the present."[7] (Doc. 121 at 2.) HD Solutions argues that "[b]oth parties' damages claims make ReBath's financials relevant." (*Id.*) Specifically, HD Solutions argues that: (1) ReBath's financials are necessary to assess whether ReBath actually suffered or mitigated any damages as it claims; and (2) ReBath's financials are critical to HD Solutions's pursuit of exemplary and punitive damages. (Doc. 121 at 2.)

      ReBath objects to HD Solutions's request. (*Id.* at 3.) ReBath asserts that neither the damages of ReBath's trademark infringement claims, nor the damages of HD Solutions's

---

[7] The Court notes that HD Solutions's RFP No. 31 was significantly broader in scope than the request made in the Joint Summary. (*Compare* Doc. 121-2 at 20 *with* Doc. 121 at 2.) At the hearing, however, HD Solutions stated that it is narrowing its request to compel production to just the information listed in the Joint Summary. (*See* Recording of May 11, 2021 Hearing, 10:27:05 a.m. – 10:28:20 a.m.)

- 9 -

misappropriation claims are tied to ReBath's financials; rather, both damages claims rely solely on HD Solutions's financials. (*Id.*) The Court largely agrees and will deny HD Solutions's request to compel for the reasons stated below.

### 1. Mitigation.

HD Solutions first argues that it must obtain ReBath's financials to show ReBath failed to mitigate its damages. Specifically, HD Solutions states:

> [ReBath's financials] are needed for HD Solutions to assess whether ReBath has actually suffered (or mitigated) any damages as it claims, which must be established with reasonable certainty. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the infringement."), *abrogated on other grounds*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). If ReBath is unwilling to produce its financial documents that would show financial harm it has or has not suffered, then its claim for damages cannot go forward.

(Doc. 121 at 2.)

HD Solutions's argument is not persuasive. HD Solutions has failed to show how ReBath's financials are relevant to an issue of mitigation. HD Solutions has not articulated how they intend to use ReBath's financials to demonstrate that ReBath failed to potentially "mitigate" damages. Additionally, it seems that any analysis of ReBath's financials – which are made up of the aggregate of ReBath's dealings with more than 100 franchisees nationwide – would have little correlation to ReBath's potential mitigation of damages in the narrow context of the San Antonio market at issue here. What is more, the only potentially relevant financial information necessary to assess ReBath's damages or mitigation is information that ReBath has already produced – the sales, marketing, and advertising information from ReBath's new San Antonio-franchisee, Texas Design.

At the hearing, HD Solutions also argued that it must receive ReBath's financials because ReBath is seeking both disgorgement of HD Solutions's profits and actual damages under 15 U.S.C. § 1117(a). HD Solutions contends that because ReBath is seeking *actual* damages under 15 U.S.C. § 1117(a), HD Solutions is entitled to investigate the legitimacy of those actual damages and any potential failure to mitigate those actual

1 damages. But ReBath made clear on the record that HD Solutions's characterization of the damages it seeks is not accurate. Specifically, ReBath stated that it is seeking only the "disgorgement of profit and then *in the alternative* the reasonable royalty that HD Solutions would have paid to ReBath had it been a franchisee during the infringing timeframe." (*See* Recording of May 11, 2021 Hearing, at 10:57:00 a.m. – 10:57:41 a.m.) Neither of these calculations require investigation of ReBath's financials.

### 2. Exemplary or Punitive Damages.

HD Solutions next argues that ReBath's financials are critical to HD Solutions's pursuit of exemplary and punitive damages. (Doc. 121 at 2.) Specifically, HD Solutions asserts that discovery of a party's financial information and net worth is appropriate where a plaintiff is seeking punitive damages against that party, even without a prima facie showing that punitive damages will be available. (*See id.* (citing *Lopez v. Mauisun Computer Sys. Inc.*, 2015 WL 13766312, *2 (D. Ariz. May 6, 2015) (granting motion to compel financial information relevant to punitive damages "without a prima facie showing by Plaintiff"); *Momot v. Mastro*, 2011 WL 1833349, *5 (D. Nev. May 13, 2011) ("Although the Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged . . . most courts do not require the plaintiff to make a prima facie showing of merit on its punitive damage claim before permitting discovery of a defendant's net worth.")).)

"The State of Arizona has adopted a general rule mandating that 'prima facie proof of a defendant's liability for punitive damages [is necessary] before his wealth or financial condition may be discovered." *Richbourg v. Jimerson*, No. CV-12-0136-TUC-BGM, 2012 WL 4355906, at *2 (D. Ariz. Sept. 24, 2012) (citing *Larriva v. Montiel*, 691 P.2d 735, 736 (Ariz. Ct. App. 1984)). Other federal courts are split regarding whether to allow pretrial discovery of financial information prior to a plaintiff to establish a prima facie case of punitive damages. *See CEH, Inc. v. FV "Seafarer" (ON 675048)*, 153 F.R.D. 491, 499 (D.R.I. 1994) (discussing majority and minority rule).

Although Rule 26(b)(1) allows for broad discovery, a litigant's right to that

- 11 -

discovery is not unlimited. "District courts need not condone the use of discovery to engage in 'fishing expedition[s].'" *Rivera v. Nibco, inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). Toward this end, the Court has the inherent power to control discovery as it deems necessary. *See Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975).

Here, unlike in *Lopez* (where plaintiff sought punitive damages for her claims of employment discrimination and retaliation) or *Momot* (where plaintiff sought punitive damages for his claims of fraud and unjust enrichment), HD Solutions is seeking punitive damages for trade secret misappropriation. (*See* Doc. 88.) In a trade secret misappropriation context, any punitive damage award is capped at "not more than 2 times the amount of damages awarded" for actual damages, unjust enrichment, or by imposition of liability for reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret. *See* 18 U.S.C. § 1836(b)(3)(C). *See also* Ariz. Rev. Stat. § 44-403(B) ("If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection A."); Tex. Civ. Prac. & Rem. Code § 134A.004(b) ("If willful and malicious misappropriation is proven by clear and convincing evidence, the fact finder may award exemplary damages in an amount not exceeding twice any award made under Subsection (a).").

Because any damages HD Solutions may receive are easily calculable based on the royalty the ReBath earned as a result of their alleged misappropriation, and the resulting punitive damages are capped at twice that number, it seems both burdensome and overly invasive to compel production of ReBath's financials. Such discovery would provide no benefit to establishing the amount of punitive damages available but may well cause competitive harm to ReBath as a competitor of HD Solutions. *See CEH, Inc.*, 153 F.R.D. at 499 ("The Court does recognize that a protective order may not always protect a party. For example, if the plaintiff and the defendant were business competitors, disclosure of the defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm. In such circumstances, a delay in discovery until a *prima facie* showing of entitlement to punitive damages is shown might be justified.").

**3.      Proportionality.**

The Court also finds that HD Solutions's request for ReBath's financial information is not proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1); *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. at 563-65. Rule 26(b)(1) identifies several factors courts may consider in addressing proportionality, including *inter alia* the importance of the discovery in resolving the issues, and the parties' relative access to that relevant information. *See* Fed. R. Civ. P. 26(b)(1); Rule 26, Advis. Comm. Notes for 2015 Amends.

Here, the importance of HD Solutions's requested discovery to resolving the issues at stake is marginal at best, and weighs against finding the request proportional. As discussed above, obtaining ReBath's financial information would do little to assist with calculating the potential damages for either party's claims. And to the extent HD Solutions seeks the information to show ReBath failed to mitigate their damages, ReBath has already produced responsive discovery containing the information HD Solutions purports to need.

The parties' relative access to the information also weighs against finding HD Solutions's request proportional. As discussed at the hearing, ReBath has already disclosed the sales, marketing, and advertising information for ReBath's new San Antonio-franchisee, Texas Design, during the relevant time period.

ReBath is a national franchisor of approximately 100 separate franchisees across the country. Its financials are comprised of the aggregate of its dealings with those companies. For the reasons discussed above, the Court finds that HD Solutions's request for the financial information of ReBath's entire company is not proportional to the needs of this case.

**c.      HD Solutions is not entitled to discover all documents concerning agreements between ReBath and Texas Design.**

In the final Joint Summary, HD Solutions asks the Court to compel all "documents concerning agreements between ReBath and Texas Design." (Doc. 122 at 2.) In support of its request, HD Solutions largely restates arguments it has made in the previous two Joint Summaries. Specifically, HD Solutions argues:

> ReBath's and Texas Design's agreements are also[8] relevant to ReBath's alleged damages. In addition to seeking disgorgement of profits, ReBath claims it suffered damages. According to its damages report, ReBath seeks damages for September 2019 and October 2019—when Texas Design signed its franchise agreement, became a ReBath franchisee licensed to use its trademarks, and could have begun sales. Texas Design's agreements will reveal the terms of its financial obligations to pay ReBath an initial franchise fee, royalty fees, advertising fund payments, and marketing fund payments. All of these payments relate to and affect ReBath's total damages amount. Without this information, HD Solutions cannot fully rebut ReBath's claimed damages.

(*Id.*) ReBath objects to HD Solutions's requests because "Texas Design is *not* a party to this case[,]" and "ReBath seeks damages associated with HD Solutions' infringement, which are comprised of the profits that *HD Solutions* earned while infringing on the ReBath marks, or alternatively, what ReBath would have earned had *HD Solutions* used the marks lawfully under a valid franchise/license agreement. The ReBath/Texas Design franchise agreement is not relevant to ReBath's damages[.]" (*Id.* at 3 (emphasis in original).) The Court agrees.

ReBath has agreed to produce a redacted copy of its franchise agreement with Texas Design under an attorneys'-eyes-only designation. The redacted copy will identify the effective date of the franchise agreement and the royalty fee structure for Texas Design. To the extent HD Solutions seeks additional disclosure of agreements between ReBath and Texas Design, HD Solutions's request is denied.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff ReBath's objections to Defendant HD Solutions's Requests for Production Nos. 1, 7, 20, and 31 (docs. 120, 121, 122) are **sustained**.

2. Defendant HD Solutions's Requests for Court Orders Compelling Production of Texas Design's profit and loss statements (doc. 120), ReBath's financial

---

[8] HD Solutions first argues that it is entitled to the requested discovery because, in its FAC, ReBath alleges that it had difficulties selling its San Antonio franchise territory because of Defendants' alleged use of ReBath's trademarks. However, ReBath has clarified that it "is *not* seeking damages that derive directly" from "its efforts to secure a new franchisee in the San Antonio area as a result of HD Solutions' trademark infringement." (*See* Doc. 122 at 2-3.) Accordingly, the Court need not address HD Solutions's argument on that point.

- 14 -

information (doc. 121), and documents concerning agreements between ReBath and Texas Design (doc. 122) are **denied**.

Dated this 13th day of May, 2021.

Honorable John Z. Boyle
United States Magistrate Judge