**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ReBath LLC, | No. CV-19-04873-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| HD Solutions LLC, *et al.*, | |
| Defendants. | |

At issue is the admissibility of expert testimony provided by Mr. Lesovitz on behalf of HD Solutions LLC ("HDS"). The Court considers Plaintiff's Rule 702/*Daubert* Motion to Exclude Defendant's Expert Joseph W. Lesovitz (Doc. 155, Mot.), Defendant's Response (Doc. 168, Resp.), and Plaintiff's Reply (Doc. 178, Reply). It finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

I.    **BACKGROUND**

A.    **Brief Summary of Facts**

This matter began with a contract dispute between ReBath, a franchisor of bathroom remodeling services and related products, and HDS, their former franchisee in the San Antonio market. (Doc. 160, Def.'s Statement of Facts ("DSOF") ¶ 1, 6; Doc. 162, Pl's Statement of Facts ("PSOF") ¶ 1, 2.) From 2007 until June 2019, HDS sold ReBath's products and did business under the name "ReBath of San Antonio." (DSOF ¶ 5.) As part of the franchise agreement, HDS used "RB Direct," a marketing and database software, to store and develop a list of prospective and existing customers. (PSOF ¶ 34; DSOF ¶ 29-31.)

1   This list included each person's name, address, details about sales, financial information,
2   and how they discovered HDS. (DSOF ¶ 32.)

3          By 2018, the relationship between ReBath and HDS began to sour. (PSOF ¶ 6.) That
4   spring, they entered arbitration pursuant to their second amended franchise agreement.
5   (PSOF ¶ 1, 6; DSOF ¶ 34.) The arbitrator granted HDS the right to terminate its franchise
6   agreement with ReBath. (DSOF ¶ 38; PSOF ¶ 8.) The arbitrator's final award specified
7   that, upon termination, ReBath was to "divest" itself of HDS's customer data and, on
8   receipt of that data, HDS was required to remove ReBath's mark from all materials or
9   property. (PSOF ¶ 36; DSOF ¶ 53.)

10          HDS elected to terminate the franchise agreement, effective June 30, 2019. (PSOF
11   ¶ 11; DSOF ¶ 40.) ReBath did not contest the termination and the separation of the parties
12   proceeded. (*See generally* PSOF; DSOF ¶ 41.) ReBath took steps to provide HDS with its
13   customer data and HDS began to rebrand its business as "Legacy Bath & Kitchen." (*See*
14   *generally* PSOF; DSOF ¶ 44, 59.) Both parties now claim that the break was not clean and
15   that the opposing party has breached its obligations under the arbitrator's final award.
16   (PSOF ¶ 13; Doc. 158, Def.'s Mot. for Summ. J. ("DMSJ") 3:5-6.)

17          ReBath alleges that HDS has failed to disassociate itself from ReBath by, among
18   other things, using the ReBath mark on business cards, trucks, uniforms, its website,
19   various communication channels, and a sign on the exterior of its business locations stating
20   that "Re-Bath is now Legacy Bath & Kitchen." (PSOF ¶ 13.) ReBath has brought Lanham
21   Act claims for trademark infringement under 15 U.S.C. § 1114 and false designation of
22   origin under *id.* § 1125(a)(1)(A), along with state law claims for trade secret infringement,
23   cybersquatting, and breach of contract. (Doc. 159, Pl.'s Mot. for Summ. J. ("PMSJ") 1:3-
24   8, 6:26-27.)

25          HDS alleges that ReBath illegally retained a copy of its customer data and provided
26   it to ReBath's new franchisee in San Antonio, Texas Design. (DMSJ 3:5-6, 14:1-2.) As a
27   franchisee of ReBath, Texas Design has had access to RB Direct since late 2019. (DSOF
28   ¶ 79.) HDS alleges that Texas Design has been given access to its customer data via ReBath

and RB Direct. (DMSJ 15:14-16, 16:22-23.) Based on these allegations, HDS brought a counterclaim against ReBath for misappropriation of trade secrets under the Federal Defend Trade Secrets Act. (DMSJ 16:25-26.)

**B.     Mr. Lesovitz's Opinions**

HDS retained Mr. Lesovitz to calculate damages on its counterclaims and rebut the report submitted by ReBath's expert, Mr. Cook (the "Cook Report") as to ReBath's damages. (Mot. at 3.) His findings are detailed in three reports: (1) an initial report, (2) a rebuttal report and (3), a supplemental report (together the "Lesovitz Reports"). (Mot. at 3.) These reports offer Mr. Lesovitz's opinion as to HDS's damages, whether Texas Design exploited HDS's data, and his criticisms of Mr. Cook's report on ReBath's damages under its Lanham Act claims. (Mot. at 3.) Mr. Lesovitz was not proffered as expert on liability. (Resp. at 12.) However, in his report he expressed opinions as to whether Texas Design obtained sales using HDS's customer data. (Reply at 5.)

To calculate the damages that ReBath would owe if it is found liable, Mr. Lesovitz compared HDS's and Texas Design's customer data to find characteristics that indicated Texas Design had accessed HDS's data. (Mot. at 5-6.) If Mr. Lesovitz identified a person in Texas Design's data that had any of the following characteristics relating to HDS, he considered them to have originated from HDS: (1) bearing the same name as a person in HDS's data, (2) bearing the same address as a person in HDS's data, (3) having "appointment source" information indicating that the person in Texas Design' data found the company through a channel associated with HDS, such as "Google SA," or (4) having an "appointment taker" that had never worked for Texas Design and was associated with HDS. (Mot. at 6-8; Resp. at 7-9; Doc. 172-3 at 8 (sealed).) Mr. Lesovitz considered all people he identified using the "appointment source" and "appointment taker" characteristics to have originated from HDS, even where that person did not have a match in HDS's data. (Mot. at 7-8.) Mr. Lesovitz then tallied Texas Design's sales relating to the identified records to calculate HDS's total lost revenue and two damages estimates: (1) total lost profits and (2) disgorgement damages. (Mot. at 6, 9-10.)

Finally, Mr. Lesovitz's rebuttal report ("the Rebuttal Report") criticizes the Cook Report's calculation of ReBath's trademark infringement damages. (Mot. at 10.) Mr. Lesovitz raises several concerns regarding the Cook Report. First, he takes issue with the fact that it does not consider testimony by Texas Design's principle, Mr. Sidhu, which he believes demonstrates Texas Design's use of HDS's data.[1] (Mot. at 10.) Second, he criticizes the report's failure to establish a causal link between HDS's alleged use of ReBath's mark and actual harm suffered by ReBath, or to deduct costs or apportion revenue from other sources in its calculation of HDS's profits to be awarded to ReBath as damages. (Mot. at 11.)

## II. LEGAL STANDARD

Under Rule 702, an expert may testify on the basis of their "scientific, technical, or other specialized knowledge" if it "will help the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). The trial judge acts as the "gatekeeper" of expert witness testimony by engaging in a two-part analysis. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 592 (1993). First, the trial judge must determine that the proposed expert witness testimony is based on scientific, technical, or other specialized knowledge. *Id.*; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Second, the trial court must ensure that the proposed testimony is relevant—that it "will assist the trier of fact to understand or determine a fact in issue." *Id.* "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd.*, 526 U.S. at 141. However, the *Daubert* factors may not apply to testimony that depends on the knowledge and experience of the

---

[1] Mr. Sidhu's testimony did not occur until two days after Mr. Cook issued his report. (Mot. at 10.) Mr. Cook did not amend or supplement his report to account for this new testimony. (Resp. at 13-14.)

expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

"The inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.* The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted). Disputes as to the credentials, methodology, or basis for an expert's opinion generally "go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995)).

## III.   ANALYSIS

ReBath moves to exclude the Mr. Lesovitz's opinions as embodied in the Lesovitz Reports, arguing that the methodology underlying his calculation of HDS's lost profits is flawed, he is mistaken as to facts throughout his opinion, and his Rebuttal Report is undermined by misunderstandings of the law. (Mot. at 1-2.) With few exceptions, ReBath's arguments are unpersuasive. ReBath's concerns about the accuracy of the Lesovitz Reports largely go to "the weight, not the admissibility, of [the] testimony." *Id.* The proper means to challenge his testimony is "vigorous cross-examination, presentation of contrary

1   evidence, and careful instruction on the burden of proof"—not a *Daubert* motion. *Daubert*,

2   509 U.S. at 595.

3         **A.**     **Mr. Lesovitz's Opinion Regarding HDS's Lost Profits**

4        ReBath raises issues with the reliability, methodology, and helpfulness of

5   Mr. Lesovitz's opinion on HDS's lost profits. (Mot. at 1-2, 12.) The Court will address

6   each argument in turn.

7        ReBath first challenges the reliability of the Lesovitz Reports' conclusions about

8   Texas Design's and HDS's data. ReBath contends that the reports use deposition testimony

9   to incorrectly conclude that Texas Design used HDS's customer data to make sales and,

10  therefore, the report's conclusions as a whole are unreliable.[2] (Mot. at 12.) However, the

11  Lesovitz Reports reference testimony from the same deposition as evidence to the

12  contrary.[3] (Resp. at 9.) In addition, Mr. Lesovitz bases his conclusion that Texas Design

13  exploited HDS's data on an analysis of shared characteristics in the data, including names,

14  addresses, and appointment takers. (*Id.* At 7-8.)

15       Mr. Lesovitz does not draw his conclusions from thin air. He can point to "sufficient

16  facts or data" underlying the report's conclusion that Texas Design exploited HDS's data.

17  Fed. R. Evid. 702(b). A motion to exclude expert testimony should not "replace the

18  adversary system" by resolving basic factual disputes. *U.S. v. 14.38 Acres of Land Situated*

19  *in LeFlore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Mr. Lesovitz's

20  conclusions as detailed in his reports will not be excluded on this basis. ReBath is, of

21  course, free to challenge Mr. Lesovitz's opinions and his bases for them on cross

22  examination or by presenting contrary evidence.

23       ReBath also argues that the Lesovitz Reports rely on information that they did not

24  disclose and therefore should be excluded. (Reply at 4.) This argument fails. Nothing in

25  the reports that indicates that Mr. Lesovitz's opinion relies on undisclosed data.

26  [2] ReBath points to Mr. Sidhu's testimony that Texas Design started "absolutely from
    scratch… in everything we did." (Mot. at 13.)

27  [3] In contrast, the Lesovitz Reports quote Mr. Sidhu saying that "if a prospect had spoken

28  to somebody in the prior ReBath franchise and [left information with them], there was a
    chance that that was information we saw." (Resp. at 9.)

1    Rule 26 requires a written report by an expert witness to disclose all the "facts or

2    data considered" in forming their opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). If the rule is

3    violated, exclusion of the opinion may be warranted. *Id.* 37(c)(1).

4          In its reply, ReBath seizes on HDS's mention of a set of approximately 60 .csv files

5    to argue that the Lesovitz Reports relied on information that was not disclosed. (Reply

6    at 4.) HDS acknowledged in its response that its full customer list goes beyond the three

7    Excel files discussed by ReBath and includes the 60 .csv files. (Resp. at 6.) From this,

8    ReBath contends that Mr. Lesovitz relied on the 60 .csv files in his reports but did not

9    disclose his reliance on these files, thus denying ReBath the opportunity to ask him about

10   them in his deposition. (Reply at 4.)

11         The Court cannot agree with ReBath's argument. Mr. Lesovitz's reports explicitly

12   describe the data he considered and repeatedly cite to attached summaries of that data. *(See,*

13   *e.g.*, Resp. at 10.) Mr. Lesovitz's supplemental report in fact discloses these 60 .csv files

14   as documents that he considered. (Resp. at 7; Doc 172-3 (sealed).) In any event, ReBath

15   deposed Mr. Lesovitz on August 10, 2021. (Doc. 168-6 at 3.) HDS disclosed the 60 .csv

16   files by email on March 17, 2021 and Mr. Lesovitz disclosed his consideration of these

17   files in his rebuttal report dated April 2nd, 2021, and then again in his supplemental report

18   dated August 2nd, 2021. (Doc. 172-2 (sealed); Doc. 168-3 at 1; Resp. at 5-6.) If ReBath

19   wished to ask Mr. Lesovitz about these files, it had ample opportunity to do so. Because

20   Mr. Lesovitz disclosed all facts and data considered in producing his reports his testimony

21   cannot be excluded on Rule 26 grounds.

22         ReBath also raises concerns about Mr. Lesovitz's methodology, namely that he uses

23   assumptions based on nothing more than *ipse dixit* to draw conclusions about HDS's lost

24   profits. (Mot. at 6.) The Court understands ReBath's concerns but cannot agree with its

25   conclusion that Mr. Lesovitz's testimony should be excluded.

26         ReBath has colorable concerns about Mr. Lesovitz's method of calculating HDS's

27   lost profits. It points out that, in forming his opinion, Mr. Lesovitz makes significant leaps.

28   First, he assumes that any person in Texas Design's data with a characteristic (whether

based on name, address, appointment source, or appointment taker) linked to a person in HDS's data is the result of Texas Design's exploitation of HDS's data. (*See, e.g.*, Mot. at 6.) Second, he assumes that any sale made to such a person would not have occurred but for Texas Design's exploitation of HDS's data. (Mot. at 7.)

While the assumptions create an optimistic calculation of HDS's lost profits, they are allowable. Mr. Lesovitz's analysis of HDS and Texas Design's data is based on "reliable principles and methods" insofar as such a complex analysis can be. Fed. R. Evid. 702(c). While grounds exist to criticize his approach and the assumptions underlying his conclusions, "the inquiry envisioned by Rule 702" is "a flexible one." *Daubert*, 509 U.S. at 594. Assumptions are an unavoidable ingredient in financial models and ReBath has not attacked Mr. Lesovitz's qualifications to make such assumptions.[4] Mr. Lesovitz's testimony about HDS's lost profits will not be excluded. Again, the proper means to attack his methods and assumptions is through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* at 596.

Finally, ReBath contends that Mr. Lesovitz's lost profits calculations are unhelpful because they involve little more than noting that similar names, addresses, and other information appears in both data sets. (Mot. at 9.) The Court does not agree.

Mr. Lesovitz's report compares and summarizes 40,000 rows of data. (Mot. at 10.) This analysis most will certainly "help the trier of fact to understand the evidence." Fed. R. Evid. 702(a). Indeed, without access to software and training, performing this analysis is "beyond the understanding of the average lay person." *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *see also, e.g., F.C.T. v. BurnLounge, Inc.*, 753 F.3d 878, 889 (9th Cir. 2014) (finding that the trial court did not abuse its discretion when it admitted expert testimony that interpreted the defendant's sales data); *Alaska Rent-A-Car Inc. v. Avis*

---

[4] Among other things, Mr. Lesovitz is a "Certified Public Accountant, Certified Fraud Examiner, Accredited in Business Valuation, Certified in Financial Forensics, and holds the Chartered Financial Analyst Designation." (Resp at 5.) ReBath has not challenged these qualifications. (Resp. at 11.; *see generally* Mot.)

1   *Budget Group, Inc*, 738 F.3d. 960 (9th Cir. 2013) (concluding that expert testimony that

2   analyzed financial data to produce a damages estimate was properly admitted).

3   Like the expert testimony in *BurnLounge* and *Alaska Rent-A-Car*, Mr. Lesovitz

4   digests complex financial information and produces conclusions that are helpful. Mr.

5   Lesovitz's opinion is based on comparison of multiple data sets and goes far beyond

6   "simple math." *Triad Cap. Mgmt., LLC v. Priv. Equity Cap. Corp*, 2010 WL 10076450, at

7   *3 (N.D. Ill. Nov. 22, 2010). Mr. Lesovitz's opinions will not be excluded.

8   **B.      Mr. Lesovitz's Opinion on the Value of Disgorgement Damages**

9   ReBath asks that Mr. Lesovitz's opinion on disgorgement damages be excluded

10   because "a jury can do simple math and read." (Mot. at 10.) *Triad Cap. Mgmt., LLC*, 2010

11   WL 10076450, at *3. The final calculation is simple and will be excluded, but the

12   underlying lost revenue figure will be admitted.

13   If expert testimony merely goes to matters which the finder of fact "is capable of

14   understanding and deciding without the expert's help" such testimony should be excluded.

15   *U.S. v. Castillo*, 924 F.2d 1227 (2d Cir. 1991) (quoting *Andrews v. Metro–North Commuter*

16   *R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989)). Courts have repeatedly excluded expert

17   testimony that involves nothing more than "simple math." *Triad Cap. Mgmt.*, 2010 WL

18   10076450, at *3 (excluding expert testimony calculating the sum of "eight line-items of

19   expenses"); *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, 2010 WL 2978289,

20   at *3 (D. Conn. Apr. 9, 2010) (excluding expert testimony where the expert subtracted one

21   number from another and multiplied the result by an interest rate).

22   Mr. Lesovitz's final disgorgement figure is merely ReBath's royalty percentage rate

23   multiplied by the total lost revenue figure he calculated. (Mot. at 10.) This is "simple math"

24   indistinguishable from the calculations in *Triad Cap. Mgmt.* and *Master-Halco, Inc*. While

25   this calculation is fair game for counsel to argue, any testimony by Mr. Lesovitz regarding

26   his opinion of HDS's total disgorgement damages must be excluded. However, the

27   underlying lost revenue opinion (detailed in his lost profits methodology) is based on his

28   detailed analysis of HDS's and Texas Design's data and will not be excluded.

### C.      ReBath's Contention That Mr. Lesovitz Improperly Opines on Liability

ReBath argues that Mr. Lesovitz's opinions that Texas Design may have obtained sales by exploiting HDS's data should be excluded because, in offering such an opinion, he is opining on liability. (Mot. at 14-15.) This argument appears to confuse Mr. Lesovitz's opinion as to damages with the separate legal issue of whether ReBath is liable as a matter of law. Rule 702 explicitly limits expert testimony to "evidence or… fact[s] in issue." Fed. R. Evid. 702(a). Questions of law, on the other hand, are the "exclusive and distinct province of the trial judge." *U.S. v. Weitzenhoff*, 35 F.3d 1275, 1277 (9th Cir. 1993) quoting *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988) (overruled on other grounds).[5]

The Court has no trouble finding that Mr. Lesovitz's opinions do not reach questions of law. He is not proffered as a liability expert. (Resp. at 12.) Mr. Lesovitz necessarily had to identify which sales he believed resulted from Texas Design's exploitation of HDS's data to calculate damages. (Resp. at 12.) ReBath's liability depends on its legal right to use HDS's customer data, not simply whether Texas Design (an entity that is not a party to this suit) obtained and used that data. Mr. Lesovitz may opine about whether data was taken from HDS's customer list based on his experience as a fraud examiner without reaching questions of law. He may not, of course, testify as to whether such a conclusion makes ReBath liable to HDS.

ReBath argues that, alternatively, Mr. Lesovitz's opinions should be excluded because he is simultaneously offered as a fact and expert witness. To support this contention, ReBath cites *U.S. v. W.R. Grace*, 455 F.Supp.2d 1148 (D. Mont. 2006). There, a witness was to testify as an expert regarding his scientific conclusions in a letter he sent to the defendant and, simultaneously, as a fact witness on the impact of the letter. *Id.* at 1155. The trial court concluded that the witness could not be used for both purposes— expert and factual testimony—without confusing or prejudicing the jury. *Id.*

---

[5] Nevertheless, even if expert testimony uses legal terms or concepts, it may still be admissible. *Hangartner v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (concluding that expert testimony on the legal issue of bad faith was properly admitted because the expert did not reach a legal conclusion and the testimony was helpful).

*W.R. Grace* is easily distinguishable. Mr. Lesovitz is not offered as a fact witness with direct knowledge of the impact of his report at HDS, ReBath, or Texas Design, or of business operations at those entities. He is offered as an expert witness to interpret extensive sales and customer data. (Mot. at 3, 5-6.) To produce his damages estimate he must opine on which sales, if any, resulted from Texas Design's use of HDS's data. (Resp. at 12.) His opinion on whether Texas Design used HDS's data will not be excluded on these grounds.

### D.   ReBath's Challenges to Mr. Lesovitz's Rebuttal Report

Finally, ReBath moves to exclude the Rebuttal Report on the grounds that it is unreliable. (Mot. at 10.) ReBath's arguments are twofold: (1) that Mr. Lesovitz unfairly faults Mr. Cook for not considering evidence unavailable to him, and (2) that the Rebuttal Report misunderstands how damages are calculated under the Lanham Act. (Mot. at 10; Reply at 8-9.)

The Rebuttal Report criticizes the Cook Report for failing to consider evidence pointing to Texas Design's use of HDS's data, particularly testimony by Texas Design's principal, Mr. Sidhu. (Mot. at 10.) ReBath fairly points out that the final Cook Report could not have considered Mr. Sidhu's testimony because it occurred two days after the Cook Report was issued. (Mot. at 10.) Yet Mr. Cook could have considered other evidence in the record concerning Texas Design's potential use of HDS's data.[6] Alternatively, Mr. Cook could have produced a supplemental report. (Resp. at 14.) He has done neither of these things, thus Mr. Lesovitz's criticisms "logically advance a material aspect" of HDS's case and are therefore helpful. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Mr. Lesovitz's criticisms as set forth in his Rebuttal Report are admissible and subject to cross examination.

Mr. Lesovitz's supposed misunderstandings of the law in the Rebuttal Report are a more complex issue. ReBath cites dicta from the Southern District of New York supporting

---

[6] The Lesovitz Reports cite emails from Texas Design that were available to Mr. Cook as evidence that Texas Design used HDS's data. (Resp. at 14.)

the proposition that testimony which misunderstands the law should be excluded. (Mot. at 11-12.) *River Light V, LP v Lin & J Intern, Inc.* No. 13CV3669 DLC, 2015 WL 3916271, at *4 n.3 (S.D.N.Y. June 25, 2015). The District of Nevada agrees that such misunderstandings are fatal where they infect the entirety of the expert's testimony. *Baskim Holdings Inc. v. Two M, Inc.*, No. 216CV01898APGGWF, 2018 WL 4880758, at *1 (D. Nev. June 8, 2018) (holding that an expert's damages estimate starting from the incorrect date was based on a misunderstanding of the law and should be excluded).

Mr. Lesovitz's Rebuttal Report does not appear to be based on a misunderstanding of the law so fundamental as to infect his entire opinion. He calculates HDS's costs and unrelated revenue to be deducted from ReBath's damages. (Resp. at 13.) As ReBath points out, it is the defendant's burden to prove such deductions under the Lanham Act. *4 Pillar Dynasty LLC v. New York & Company, Inc.*, 933 F.3d 202, 214 n. 11 (2d Cir. 2019). Yes, Mr. Lesovitz frames these deductions as a criticism of the Cook Report and its failures to calculate ReBath's damages. (Resp. at 13.) But a criticism is simply not equivalent to a legal opinion. Mr. Lesovitz's deductions of HDS's costs and apportionment of unrelated revenue is helpful to the jury in determining what damages, if any, should be awarded to ReBath. Mr. Lesovitz's opinion of ReBath's damages as set forth in his Rebuttal Report will not be excluded.

ReBath's argument, however, is not entirely without merit. His criticism of the Cook Report for failing to establish that ReBath suffered actual harm caused by HDS is based on a misunderstanding of the law and will be excluded. "Nothing in the Lanham Act conditions an award of profits on plaintiff's proof of harm." *TrafficSchool.com Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011). Any expert testimony inferring that such a showing is required may confuse the jury, and is simply wrong. Questions of law are the "exclusive and distinct province of the trial judge." *Weitzenhoff*, 35 F.3d at 1277. Any legal conclusion that Mr. Lesovitz offers—correct or incorrect—will not be permitted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Rule 702/*Daubert* Motion to Preclude Mr. Lesovitz's Expert Opinions (Doc. 155; Doc. 172 sealed).

Dated this 7th day of July, 2022.

Honorable John J. Tuchi
United States District Judge