**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ReBath LLC, | No. CV-19-04873-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| HD Solutions LLC, *et al.*, | |
| Defendants. | |

At issue is Plaintiff ReBath LLC's ("ReBath") Motion for Reconsideration (Doc. 223, Mot.), which seeks reconsideration of the Court's August 12, 2022 Order denying Plaintiff's Motion for Summary Judgment (Doc. 221, Order). The District of Arizona's Local Rules of Civil Procedure prohibit the filing of a response absent an Order of the Court. *See* LRCiv 7.2(g)(2). Here, the Court finds the Motion ripe for resolution without such a response. For the reasons set forth below, the Court denies the Motion.

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). A motion for reconsideration "may not

be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc*., 215 F.R.D. 581, 586 (D. Ariz. 2003).

In its Motion for Reconsideration, ReBath argues that the Court erred in its Order denying ReBath's Motion for Summary Judgment on its claims for violation of the Lanham Act and breach of contract. (Mot. at 1.) Specifically, ReBath contends that the Court erred in its interpretation of the arbitrator's final award, dated July 25, 2019 (the "Final Award"), when it found that the question of *divestiture* precluded the Court from entering summary judgment in its favor, because Defendant HD Solutions LLC's ("HDS") obligation to discontinue using ReBath's trademarks was triggered when it *received ownership rights* to the consumer list/database, and that date is not in dispute. (Mot. at 2, 3.)

Section VI of the Final Award contains the arbitrator's decision on HDS's request to terminate. That section, quoted in its entirety, reads as follows:

> On a date no later than June 30, 2019, and in accordance with the May 30, 2019 Order on ReBath's Request for Reconsideration, HD Solutions must make its election on its right to terminate.

> Accordingly, if HD Solutions elects to terminate, the Second [Amended and Restated Renewal Franchise Agreement ("A&R")] A&R will therefore be ordered null and void, and the post-termination obligations, including the post-termination noncompete covenant in Section 26(C) of the Second A&R shall not bind, or be enforceable against, HD Solutions. HD Solutions will immediately discontinue the use of the Marks or the System, will turn over to ReBath the System Manual and any other confidential and proprietary materials or information of ReBath, and will no longer operate under the name "Re-Bath" or "Re-Bath of San Antonio." HD Solutions will remove the Marks from all signage, vehicles, online listings, and all other sources within **30 days after receiving ownership rights** to its customer database/list from ReBath.

> In a good faith effort to fulfill HD Solutions' and ReBath's obligations to customers, all sold jobs shall be installed by HD Solutions with Required Products fulfilled by ReBath at current pricing offered to all other network franchisees.

> ReBath must **immediately and completely divest** to HD Solutions: (1) all ownership rights to HD Solutions' Facebook, Google My Business and Google Places, Angie's List, and Houzz pages, and YouTube channel (and its content) at http://wwwyottube.wn/user/rebathsanantonio; (2) all

1   ownership rights to phone numbers associated with the HD Solutions
2   business (both hardlines and online listing and tracking numbers, including
    (210) 775-1719, (210) 465-1472, (210) 465-1398, (210) 399-4527,(210)
3   446-0081, (210) 466-1449,(210) 951-2859, (210) 468-1113, (210) 951-2079,
    (210) 957-2212, (210) 570-9991, (210) 876-5362, and, (210) 910-5142);
4   **(3) HD Solutions' customer lists/database** and any and all customer
    reviews. *See* ID at 28. ReBath must take all necessary actions to accomplish
5   the transfer of same to HD Solutions, including providing any necessary
    authorizations to third parties to allow HD Solutions to obtain access to the
6   customer list/database. ReBath is not permitted to retain a copy of HD
    Solutions' customer list/database or to use the same.

7   (Doc. 162-5, Ex. 1, Hillier Dec., Ex. E at 56 (emphasis added).)

8          While ReBath acknowledges that the Final Award states that it shall "divest" the

9   consumer list/database, it contends that the divestiture does not relate to the 30-day window

10  HDS was given to cease its use of ReBath's marks. (Mot. at 3.) ReBath notes that the

11  paragraphs discussing divestiture and Defendant's removal of the marks are "entirely

12  separate," and that there is an unrelated paragraph between them. (Mot. at 4.) ReBath also

13  asserts that the Court's interpretation of the Final Award conflates HDS's receipt of

14  ownership rights with ReBath's obligation to divest, effectively granting HDS "license to

15  use and violate [its] trademark rights in potential perpetuity." (Mot. at 5.)

16         Additionally, ReBath argues that there is no issue of fact that precludes summary

17  judgment in its favor because the customer list has always been "100 percent" owned by

18  HDS. (Mot. at 5.) Further, according to ReBath, even if HDS did not always have

19  ownership rights, the arbitrator awarded ownership of the customer list/database to HDS

20  along with the right to terminate. (Mot at 5.) Thus, according to ReBath, the latest that HDS

21  possibly acquired the ownership rights was July 25, 2019, so when HDS continued to use

22  ReBath's marks beyond August 25, 2019, it violated both the Final Award and the Lanham

23  Act. (Mot. at 5.)

24         The Court disagrees with ReBath's arguments concerning both the Court's

25  interpretation of the Final Award and its denial of summary judgment. First, Plaintiff's

26  arguments concerning the Court's interpretation of the Final Award are misplaced. The

27  plain language of the arbitration award makes clear that ReBath's divestment is the vehicle

28  for HDS's receipt of ownership. In saying as much, the Court is not "conflating" ownership

and possession, nor is it granting HDS a license to use and violate ReBath's marks—it is merely acknowledging the existence of a condition precedent. Further, the fact that a paragraph separates the Final Award's directive that HDS must cease its use of ReBath's marks "within 30 days after receiving ownership rights," from the paragraph compelling ReBath to "immediately and completely divest" is immaterial. The paragraph directing ReBath to divest is the final paragraph in Section VI of the Final Award, and is a directive to take action towards conferring ownership of the customer database on HDS. ReBath was required to "take all necessary actions to accomplish the transfer of [customer lists/database and any and all customer reviews] to HD Solutions," which reinforces the Court's interpretation that divestment is the vehicle for ownership.

Second, Plaintiff's argument that there is no issue of fact that precludes summary judgment is equally baseless. If the Final Award simply and automatically conferred ownership upon HDS, the present dispute would not still be before the Court more than three years after it was initially filed. (*See* Doc. 1.) Moreover, if ownership of the data had been automatically conferred on HDS via the Final Award, the arbitrator would not have needed to direct ReBath to divest the same, and as ReBath observed in its Motion, the "arbitrator surely understood the difference between the words 'divestiture' and 'receipt of ownership.'" (Mot. at 4.)

**IT IS THEREFORE ORDERED** denying Plaintiff ReBath's Motion for Reconsideration (Doc. 223).

Dated this 27th day of September, 2022.

Honorable John J. Tuchi
United States District Judge